UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                    Case No. 1:14-cr-20427-02

v.                                                  Honorable Thomas L. Ludington
                                                        Magistrate Judge Patricia T. Morris

KWAME AMIN MATHEWS,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

On October 8, 2014, Defendant Kwame Amin Mathews pleaded guilty to one count of aiding and abetting the distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. ECF No. 76. He was sentenced to 151 months' imprisonment and three years' supervised release. ECF No. 147. He is currently housed at Federal Medical Center, Lexington ("FMC Lexington") in Kentucky.

On September 14, 2021, Defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), asking for immediate release from custody based on his diagnosis with multiple sclerosis (MS) and the spread of COVID-19's Delta variant.[1] ECF No. 362. Defendant's Motion has since been fully briefed. *See* ECF Nos. 362; 370.

---

[1] This is Defendant's fourth attempt to obtain compassionate release. Defendant first sought compassionate release in April 2020, citing his MS diagnosis and the COVID-19 pandemic. ECF No. 314. That motion was denied without prejudice for lack of exhaustion. ECF No. 320. Defendant returned with a renewed motion the following month. ECF No. 321. This Court denied that motion on the merits, which the Sixth Circuit Court of Appeals affirmed in March 2021. ECF Nos. 327; 351. Two months later, Defendant sent a letter asking this Court to reconsider its decision. ECF No. 359. The letter was liberally construed as a motion for reconsideration and denied as untimely. ECF No. 360.

As explained below, Defendant's Motion for Compassionate Release will be denied because (1) he has not demonstrated an extraordinary and compelling reason for release and (2) the factors set forth in 18 U.S.C. § 3553 do not warrant release.

## I.

Defendant seeks a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)—a form of relief commonly referred to as "compassionate release." A motion for relief under section 3582(c)(1)(A) requires a two-part analysis.

The first part is exhaustion: a defendant may move for a reduction under § 3582(c)(1)(A) only after requesting a reduction from the Bureau of Prisons (BOP) and then either (1) "fully exhaust[ing] all administrative rights" or (2) waiting until "30 days [have elapsed] from the receipt of such a request by the warden." *See* 18 U.S.C. § 3582(c)(1)(A). This first step is a "mandatory claim-processing rule[]" that "must be enforced" if "properly invoked." *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020).

The second part involves the Sixth Circuit's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." . . . At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

II.

A.

The first issue is whether, before filing his Motion, Defendant requested compassionate release from the BOP and then either (1) received a denial and fully exhausted his administrative remedies or (2) received no response but waited at least 30 days before filing his Motion. *See* 18 U.S.C § 3582(c)(1)(A).

Defendant has filed documentary evidence indicating that he requested compassionate release from Warden David Paul on June 4, 2021. *See* ECF No. 362 at PageID.2423. Defendant's request was denied in writing on June 9, 2021. *Id.* Accordingly, Defendant has properly exhausted his administrative remedies with the BOP.

B.

The next issue is whether "extraordinary and compelling reasons" justify reducing Defendant's sentence. *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020). Although Congress did not define "extraordinary and compelling reasons," the Sentencing Commission has identified several reasons that qualify as "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 comment n.1 (identifying various medical conditions and family circumstances). But, following the enactment of the First Step Act of 2018, the Sixth Circuit held that "§ 1B1.13 [is] 'inapplicable' to cases where an imprisoned person files a motion for compassionate release."[2] *Jones*, 980 F.3d at 1109 (quoting *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)). Therefore, "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip

---

[2] But the district court may "consider [§ 1B1.13] as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release." *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021).

step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.*

But that discretion is not unfettered. *United States v. Hunter*, No. 21-1275, 2021 WL 3855665, at *4 (6th Cir. Aug. 30, 2021) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005)). Recently, the Sixth Circuit endorsed a textual analysis whereby courts must look to the ordinary meaning of the terms "extraordinary" and "compelling" to assess the defendant's proffered reasons. *See id.* (noting that when section 3582(c) was enacted, "extraordinary" meant "most unusual, far from common, and having little or no precedent," and "compelling" meant "forcing, impelling, driving." (quoting WEBSTER'S THIRD INTERNATIONAL DICTIONARY: UNABRIDGED 463, 807 (1971)) (cleaned up)).

Consistent with *Hunter*, this Court must determine whether Defendant's reasons for a reduced sentence are "extraordinary" and "compelling," as commonly understood. *See id.*; *see also United States v. Powell*, No. 2:12-CR-20052-2, 2021 WL 613233, at *2 (E.D. Mich. Feb. 17, 2021) ("Several cases in the Eastern District of Michigan have adopted textual analyses to determine what reasons are 'extraordinary and compelling[.]'") (collecting cases).

Defendant advances two reasons for compassionate release: (1) his MS diagnosis[3] and (2) the spread of the Delta variant. For the reasons explained below, neither reason, whether considered independently or in combination, is extraordinary and compelling.

First, Defendant's MS diagnosis, though "extraordinary," does not "compel" his release. Defendant claims that MS is causing both his physical and mental health to deteriorate. *See* ECF

---

[3] Defendant also cursorily references other, unrelated health conditions, such as a "[c]horioretinal scar [that] causes his sight and vision to be blurred" and an "unspecified skin disorder." *See* ECF No. 362 at PageID.2418. Because Defendant does not explain how these conditions weigh in favor of compassionate release, this Court declines to consider them.

- 4 -

No. 362 at PageID.2419. To be sure, MS is a serious and uncurable disease. *See United States v. Mathews*, 846 F. App'x 362, 368 (6th Cir. 2021) (discussing severity of multiple sclerosis). But Defendant has not identified any evidence regarding the severity of his symptoms.[4] Similarly, Defendant claims that FMC Lexington is "unable to properly care for [him]" but has not identified any specific instance of neglect or mistreatment. *See* ECF No. 362 at PageID.2422. Absent some evidence of severe symptoms or inadequate treatment at FMC Lexington, Defendant's MS, standing alone, does not compel his immediate release.

Second, there is little evidence that Defendant's MS increases his susceptibility to severe illness from COVID-19. This Court recognizes the Sixth Circuit's observation that "what we know about the virus today is not what we knew yesterday." *See Mathews*, 846 F. App'x at 368. But over a year has passed since Defendant's second motion was denied, and the Centers for Disease Control (CDC) continues to omit MS from its list of risk factors for COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/7FAE-AQHS].

Furthermore, the emerging consensus among researchers seems to be that MS is not a significant risk factor for contracting COVID-19.[5] *See, e.g.*, Mahdi Barzegar, *et al.*, *COVID-19*

---

[4] MS is a chronic neurological disease with symptoms that "may differ greatly from person to person and over the course of the disease depending on the location of the affected nerve fibers." *See* Multiple Sclerosis, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269 [https://perma.cc/Q3EN-7SDN]. According to his medical records, Defendant seems to suffer from MS-induced peripheral neuropathy in his legs and feet, which can cause pain, weakness, and numbness. *See* Peripheral Neuropathy, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 [https://perma.cc/ZG3F-FHWD].

[5] In his second motion for compassionate release, Defendant alleged that he was receiving weekly injections of interferon beta-1a ("Avonex") to treat his MS. *See* ECF No. 321 at PageID.2116. He argued that the Avonex injections suppressed his immune system and made him more susceptible to COVID-19. *Id.* at PageID.2117. Ironically, the same medication has since been studied as a potential treatment for COVID-19. *See* Erika Edwards, *Multiple Sclerosis Drug to be Studied for*

*Among Patients With Multiple Sclerosis*, NEUROLOGY: NEUROIMMUNOLOGY & NEUROINFLAMMATION, July 2021, at 1 (reviewing literature regarding MS patients with COVID-19 and concluding "MS did not significantly increase the mortality rate from COVID-19"); *Multiple Sclerosis & COVID-19*, NAT'L MULTIPLE SCLEROSIS SOC'Y, https://www.nationalmssociety.org/coronavirus-covid-19-information/multiple-sclerosis-and-coronavirus [https://perma.cc/RQ49-Z4B6] ("Current evidence shows that simply having MS does not make you more likely to develop COVID-19 or to become severely ill or die from the infection than the general population.").

Third, FMC Lexington is a highly vaccinated facility with a relatively low number of active infections. Although Defendant refers to the facility as a "hot spot" for infections, *see* ECF No. 362 at PageID.2417, FMC Lexington is currently reporting only one active infection in an inmate and two among staff members, *see COVID-19*, BOP, https://www.bop.gov/coronavirus/ [https://perma.cc/E3RK-6M5Z]. Additionally, 339 staff members and 1,001 inmates in the facility have been fully vaccinated against COVID-19. *Id.* Accordingly, it seems unlikely that Defendant is at imminent risk of contracting COVID-19.

Finally, Defendant is fully vaccinated against COVID-19. According to his medical records, Defendant received two doses of the Pfizer-BioNTech vaccine: the first on June 8, 2021; the second on June 29, 2021. *See* ECF No. 367 at PageID.2464–65 (filed under seal). Although the Delta variant's rapid spread is alarming, the CDC maintains that the COVID-19 vaccines "are highly effective at preventing severe disease and death, including against the Delta variant." *See*

---

*COVID-19 Treatment*, NBC NEWS (Aug. 6, 2020), https://www.nbcnews.com/health/health-news/multiple-sclerosis-drug-be-studied-covid-19-treatment-n1236003 [https://perma.cc/R83A-2LQL]. Because Defendant's latest motion does not even mention Avonex, this Court will not consider what effect, if any, the use of such medication might have on the analysis.

*Delta Variant: What We Know About the Science*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html [https://perma.cc/C8SK-RJAA]. As a result, this Court has repeatedly declined to treat the Delta variant as extraordinary and compelling. *See, e.g.*, *United States v. Bell*, No. 18-20127, 2021 WL 4148251, at *2 (E.D. Mich. Sept. 13, 2021); *United States v. Swarn*, No. 2:14-CR-20599-7, 2021 WL 4077344, at *2 (E.D. Mich. Sept. 8, 2021); *United States v. Proge*, No. 2:12-CR-20052-06, 2021 WL 3857440, at *1 (E.D. Mich. Aug. 30, 2021) ("Nothing about the Delta variant changes the fact that Defendant's 'vaccination status renders his fear of COVID-19 a non-compelling reason to grant him release.'" (quoting *United States v. Wilson*, No. 16-20081, 2021 WL 3417917, at *3 (E.D. Mich. Aug. 5, 2021))). Defendant identifies no reason to depart from that reasoning here.

Therefore, Defendant has not demonstrated an extraordinary and compelling reason for release.

### C.

Ordinarily, this Court would decline to proceed to the issue of whether the § 3553 factors warrant release, because the lack of an extraordinary and compelling reason for release is dispositive. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others."). But for the sake of thoroughness this Court will proceed to consider the § 3553 factors. Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established for--

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…

  (5) any pertinent policy statement…

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The burden is on Defendant to "make a compelling case as to why the . . . § 3553(a) analysis would be different if conducted today." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (noting that "the district court's initial balancing of the § 3553(a) factors . . . [is presumed to] remain[] an accurate assessment").

Defendant has not met his burden. During Defendant's April 2015 sentencing hearing, this Court considered various § 3553(a) factors on the record, including the nature of Defendant's offense and his personal circumstances. *See* ECF No. 149 at PageID.950–53. When denying Defendant's second motion for compassionate release, this Court again analyzed the § 3553 factors and found them to weigh against a sentence reduction. *See* ECF No. 327 at PageID.2194 (noting that "Defendant ha[d] only served 40% of his 151-month sentence" and that the underlying offense "was not his first drug-related offense"). That analysis satisfied the Sixth Circuit, which affirmed the denial. *See United States v. Mathews*, 846 F. App'x 362, 369 (6th Cir. 2021).

Defendant does not explain why that analysis was flawed or what, if anything, has changed since his last motion for compassionate release was denied. Indeed, as the Government notes,

Defendant has nearly half of his 151-month sentence remaining. *See* ECF No. 364 at PageID.2453. And his criminal history is just as serious as it was in June 2020.

Instead, Defendant argues that the § 3553(a) factors warrant a sentence reduction because he (1) would receive a "lesser term of imprisonment" if sentenced today and (2) has "taken positive steps toward rehabilitation." ECF No. 362 at PageID.2420. But Defendant does not explain why his sentence would be lower if sentenced today,[6] or why his rehabilitative efforts—even if commendable—outweigh the countervailing factors identified at the sentencing hearing and in this Court's prior Order. Simply put, Defendant's assertions are not enough to carry his burden.

Therefore, Defendant has not demonstrated that the § 3553(a) factors warrant reducing his sentence.

### III.

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 362, is **DENIED.**

Dated: October 13, 2021                    s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge

---

[6] This Court is unaware of any intervening change in law that would result in a lower guideline range.